IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Darlene Sue Hook,                         ) | Civil Action No. 6:13-1117-TLW-KFM |
|                                          ) | |
|       Plaintiff,      ) | |
|                                          ) | |
| v.                                       ) | |
|                                          ) | **REPORT OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, Acting                ) | |
| Commissioner of Social Security,[1]      ) | |
|                                          ) | |
|       Defendant.     ) | |
|                                          ) | |

      This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

      The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

      The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on January 5, 2010, alleging she became unable to work on December 31, 2007. The applications were denied initially and upon

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as Defendant in this action.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

reconsideration by the Social Security Administration. On December 1, 2010, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff appeared on August 26, 2011, considered the case *de novo*, and on November 17, 2011, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied review on February 26, 2013. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> (2)    The claimant has not engaged in substantial gainful activity since December 31, 2007, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> (3)    The claimant has the following severe impairments: degenerative disc disease, hepatitis C, hepatic steatosis and cirrhosis (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour workday, occasionally stoop, kneel, crouch, and crawl, except that the claimant can never climb ladders and [is] limited to frequent overhead reaching, bilaterally.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on January 27, 1958 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8) The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

3

>which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id*.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **MEDICAL EVIDENCE**

The plaintiff sought treatment from Doctor's Care Medical Centers ("Doctor's Care") for lumbar spine problems in September 2005. The initial impression of radiographic views of the plaintiff's lumbar spine was "narrowing L5-S1" (Tr. 305). An MRI in December 2005 indicated a shallow left-sided herniation at the T7-8 with mild displacement of the

spinal cord, but no actual compression. At L3-4 there was a shallow right paracentral herniation with "perhaps mild displacement of the right 4th root." At L4-5 there was a shallow central herniation with annular tear and bilateral 5th root contact, but no real evidence of displacement. It was the opinion of the radiologist that the MRI showed minor spondylosis with multilevel disease  (Tr. 291).

On February 4, 2008, the plaintiff presented to Doctor's Care complaining of back pain, a burning sensation in the middle of her back, coughing, congestion, and headaches. She was treated for the flu (Tr. 316).  The plaintiff returned to Doctor's Care on May 22, 2008, complaining of a continued cough.  A chest x-ray showed questionable infiltrate. The plaintiff was diagnosed with bronchitis, anxiety, and hepatitis C. (Tr. 312-13). The plaintiff tested positive for hepatitis C in May 2008 (Tr. 306).

The plaintiff contacted Doctor's Care in June 2008 complaining of "having a panic attack" and needing her prescriptions refilled. Prescriptions were called in to a pharmacy, but the plaintiff was instructed she would have to come in and see the doctor (Tr. 311). She was later referred to the Franklin Fetter Clinic (Tr. 310).  The plaintiff was given medication refills for complaints of back pain and anxiety in September 2008 (Tr. 308-09).

On January 2009, the plaintiff sought treatment at the Dream Center Clinic ("Dream Center") for stabbing chest pain. It is noted she was also there to establish care for multiple issues including chest pain, low blood pressure, osteoarthritis in her spine, and hepatitis C. She was referred to the Medical University of South Carolina ("MUSC") for follow-up regarding hepatitis C (Tr. 284-85).

On March 24, 2009, the plaintiff complained of fever, chest congestion, cough, shortness of breath, and anxiety. Providers at the Dream Center prescribed medications for

bronchitis and hypertension (Tr. 283). Treatment notes from April 2009 indicate that the plaintiff could not take her prescribed prednisone because she was having panic attacks (Tr. 282). On May 26, 2009, the plaintiff sought treatment at the Dream Center after falling up some stairs and injuring her right knee. Assessments included insomnia, edema, hypertension, and hepatitis C. She was again referred to the hepatitis C clinic at MUSC (Tr. 281). The plaintiff was diagnosed at the Dream Center with a left heel spur and advised to avoid prolonged standing on October 18, 2009 (Tr. 560).

On February 25, 2010, the plaintiff was given medication refills at the Dream Center. She reported she had edema all over her body, was congested, and had a slight cough (Tr. 531). On April 16, 2010, an x-ray of her right knee indicated mild spur formation (Tr. 325). The same day, x-rays of her lumbar spine showed moderate facet arthrosis at L3-S1, moderate disc degeneration at L4-L5 and L5-S1, and mild disc degeneration at L3-L4. There was also an asymmetric appearance of her sacroiliac joints with prominent sclerosis and moderate osteoarthritis on the right with minimal degeneration on the left (Tr. 326).

The plaintiff underwent a consultative examination with Leslie Pelzer, M.D., on April 22, 2010 (Tr. 327-328). Dr. Pelzer reviewed the May and December 2009 notes from Doctor's Care and the December 2005 MRI of the plaintiff's lumbar spine. Examination revealed that the plaintiff walked with an antalgic gait and used a cane; was tender to palpation over her elbows and shoulders; and was diffusely tender to palpation over her knees, left heel, and spine (cervical, thoracic, and lumbar). The plaintiff had a reduced range of motion in her cervical spine, lumbar spine, and shoulders. Examination of her hip was limited secondary to balance and pain. Straight leg raise was positive bilaterally. The

plaintiff could only partially squat, her grip strength was 5/5 bilaterally, she had good fine and gross manipulation, she had no muscle weakness or sensory deficit, her reflexes were intact, and she had no atrophy. Dr. Pelzer assessed the plaintiff with a history of hepatitis C, degenerative disc disease, osteoarthritis, scoliosis, sciatica, tendonitis in her elbows and of her heel, and tobacco abuse (Tr. 327-28).

In May 2010, Jean Smolka, M.D., a state agency physician, completed a physical assessment form in which she opined that the plaintiff could lift twenty pounds occasionally, could lift ten pounds frequently, and could walk or stand up to six hours each workday. She limited the plaintiff to occasional postural movements and frequent overhead reaching (Tr. 329-36).

On May 27, 2010, the plaintiff was assessed at the Dream Center as having myalgia and hypertension (Tr. 356). She complained of increased pain on June 17, 2010, and was assessed with fibromyalgia (Tr. 355). Dream Center notes from August 2010 indicate she was prescribed medication for fibromyalgia, but had trouble waking up, so she stopped taking the medications (Tr. 351). Later in August 2010, her Neurontin prescription dosage was increased (Tr. 350). On October 7, 2010, the plaintiff was noted to be stable on her current medications. She reportedly could not afford to purchase her prescribed Gabopentin (Tr. 432).

In October 2010, Holly Hadley, Psy. D., a state agency psychologist, completed a psychiatric review technique form in which she opined that the plaintiff's medically determinable impairment was a substance addiction disorder, which was not severe (Tr. 371). This was noted because the plaintiff recently indicated she had been to an alcohol detox facility. There was no mention of a history of anxiety. Dr. Hadley opined

that the plaintiff had mild limitations in activities of daily living; no limitations in social functioning; and mild limitations in concentration, persistence, and pace (Tr. 371-83).

Tom Brown, M.D., a state agency physician, completed a physical functional review in October 2010. Dr. Brown opined that the plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, could stand and/or walk up to six hours in an eight-hour day, could sit up to six hours in an eight-hour day, was limited to frequent overhead reaching with her bilateral upper extremities, and could occasionally perform postural activities (Tr. 385-92).

Robert Salamon, D. C., a chiropractor who treated the plaintiff periodically from August 2010 through June 2011 (Tr. 337-45, 352, 362-70, 425-31, 446, 451-53, 459-60, 463-64, 476-513, 533), issued written statements describing the plaintiff's impairments. Dr. Salamon wrote in July 2011 that the plaintiff could only sit for fifteen minutes, could only stand or walk for fifteen minutes, and would miss more than five days each month due to her impairments (Tr. 535-39). In an August 2011 statement, he wrote that the plaintiff had a restricted range of motion in her spine, a slow and stiff gait, and required a cane (Tr. 569).

The plaintiff returned for medication refills at the Dream Center on January 27, 2011. She reported not sleeping well (Tr. 449). The plaintiff was treated again for bronchitis at the Dream Center on March 8, 2011 (Tr. 450).

On March 25, 2011, the plaintiff was seen at the MUSC GI Clinic for followup of her hepatitis C (Tr. 394-98). A liver biopsy in April 2011 revealed cirrhosis and hepatitis C with minimal inflammatory activity, and the impression was diffuse hepatic steatosis (Tr. 399-403).

On May 24, 2011, the plaintiff was seen at the Dream Center for complaints of a cough and a headache which had lasted several days. Assessment was upper respiratory infection and sinusitis, hepatitis C, and obesity. Smoking was also noted (Tr. 438).

The plaintiff returned to the MUSC GI clinic on August 19, 2011. The plan was to begin hepatitis treatment (Tr. 579-80).[3]

At the hearing in August 2011, the plaintiff testified she had back pain almost every day, ranging from seven to a ten on a ten-point scale (Tr. 84). She also testified she had leg pain almost every day, insomnia due to her pain, and pain from a heel spur that caused pain on standing (Tr. 85-88). The plaintiff testified her pain medication did not help (Tr. 86). The plaintiff stated that cirrhosis and hepatitis C both caused aches or flu-like symptoms (Tr. 100-101). She stated she did not seek treatment for her hepatitis C after being diagnosed in the early 1990s because she was recently divorced and needed to work (Tr. 96-97).

The plaintiff stated she could stand for five to ten minutes at a time, and sit for an hour at a time (Tr. 92). Regarding daily activities, the plaintiff testified she did housework

---

[3]The record contains additional records added after the ALJ's decision. These records indicate that during a February 2012 visit to MUSC for hepatitis C treatment, the plaintiff reported being sober for the previous six months and admitted previously drinking a fifth of vodka each day. She did not report back pain (Tr. 38-39). In June 2012, a physical examination indicated the plaintiff had normal spine range of motion, and the treating physician assessed her as having diabetes, hepatitis C, and a urinary tract infection (Tr. 11-12). The plaintiff "stipulates" that these records are from a subsequent application for benefits and were never before the Social Security Administration in the present claim, as evidenced by the fact that they are dated after the ALJ's decision and were not included in the list of additional evidence considered by the Appeals Council. The Commissioner contends these records are properly before the Court as the state disability determination service requested the records directly from MUSC, and the records are "highly probative" because the plaintiff's case relies almost entirely on her subjective self-reported symptoms. As the undersigned recommends that this action be remanded for reasons pertaining to the ALJ's decision (which was prior to and did not involve the records in dispute), it is not necessary at this time to determine whether these records are properly a part of the record.

in five minute intervals, including washing dishes, vacuuming, making beds, and dusting (Tr. 84). She stated she cooked light meals and went grocery shopping using an electric cart (Tr. 85, 91-92, 94).

## **ANALYSIS**

The plaintiff alleges disability commencing December 31, 2007, at which time she was 49 years old. She was 52 years old on March 31, 2010, the date she was last insured for DIB and was 53 years old at the time of the ALJ's decision. The plaintiff received her GED, and has past relevant work as a truck driver. (Tr. 68, 79). The ALJ determined that the plaintiff has the residual functional capacity ("RFC") to perform a full range of light work. The ALJ determined that the Medical–Vocational Guidelines ("the Grids") directed a finding that the plaintiff was not disabled (Tr. 29–30). The plaintiff argues (1) the ALJ's step two findings do not rest on substantial evidence; (2) the ALJ's findings at step three were legally flawed; (3) the ALJ's step four findings do not rest on substantial evidence; and (4) the ALJ did not carry his burden at step five of the sequential evaluation process.

### *Step Two/"Severe" Impairments*

The plaintiff first argues that the ALJ erred at step two by failing to consider whether her impairments of anxiety and fibromyalgia were "severe" impairments. *See* 20 C.F.R. § 404.1521(a) (defining non-severe impairments); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) (An impairment is considered non-severe "if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work ...."). As argued by the Commissioner, the record does

11

not show that these impairments caused any work-related functional limitations, and the plaintiff does not show any harm from the alleged error.

The plaintiff testified that she learned to control her panic attacks by thinking about other things, and she felt she could not control a panic attack, she took Elavil. When asked about limitations, she failed to identify anything specific (Tr. 91). Although a doctor at the Dream Center diagnosed fibromyalgia and prescribed medication, two months later the plaintiff had stopped taking the medication due to side effects (Tr. 351, 355). By October 2010, a treating physician noted that the plaintiff had "good control" over her fibromyalgia (Tr. 432). There does not appear to be any material reference in the record to fibromyalgia after that time. Thus, there is no indication that the plaintiff's fibromyalgia significantly limited her ability to do basic work for a continuous period of not less than twelve months.

Furthermore, if an ALJ commits error at step two, it is rendered harmless so long as the ALJ properly concludes that the claimant cannot be denied benefits at step two, but rather continues to the next step of the sequential evaluation process. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (holding that any error at step two of the sequential evaluation process becomes harmless if the ALJ "reached the proper conclusion that [the claimant] could not be denied benefits at step two and proceeded to the next step of the evaluation sequence"). Here, the ALJ found the plaintiff had the severe impairments of degenerative disc disease, hepatitis C, hepatic steatosis, and cirrhosis and proceeded to the next step of the sequential evaluation process. Accordingly, any allegation of error in this regard is harmless.

*Step Three/Listings/Combination of Impairments*

The plaintiff next argues that the ALJ failed to properly evaluate the combined effects of her multiple impairments. She further appears to argue that her combination of back and liver impairments limitations met or equaled Listing 1.04. The Commissioner contends that the ALJ correctly found that the plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listing and the plaintiff did not explain how her impairments combined to meet Listing 1.04 or any other listing.

When, as here, a claimant has more than one impairment, the ALJ must consider the severe and nonsevere impairments in combination in determining the plaintiff's disability. Furthermore, "[a]s a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). It "is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity.... [T]he [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them." *Id.* (*citing Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir. 1985)). The ALJ's duty to consider the combined effect of the plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability determination process." 20 C.F.R. §§ 404.1523, 416.923.

Here, it is unclear from the decision that the ALJ adequately considered the plaintiff's impairments in combination. The ALJ merely stated that the "claimant does not have an impairment or combination of impairments that meets or medically equals the

13

severity of one of the listed impairments[.]" (Tr. 65). Such a finding, in itself, is not sufficient to foreclose disability. *Walker*, 889 F.2d at 50.  In determining that the plaintiff had not met or equaled Listing 1.04, the ALJ only discussed the plaintiff's degenerative disc disease and did not discuss any other of her severe and/or nonsevere impairments. Later in his decision (Tr. 67), the ALJ discussed the plaintiff's back and liver impairments individually, but it is unclear from the decision that he considered the combination of all of the plaintiff's impairments.  Thus, this action should be remanded to the Commissioner for the ALJ to fully consider the combination of all of the plaintiff's impairments.

**Step Four/Credibility/RFC**

The plaintiff first argues that the ALJ erred at step four by failing to properly evaluate her credibility. She appears to argue that the ALJ failed to analyze her credibility pursuant to the criteria set out in SSR 96-7p, was selective in the pieces of testimony used in his decision and failed to discuss positive findings of examining physicians. The Commissioner contends that the ALJ adequately accounted for the plaintiff's credibility, noting her daily activities, her ability to care for herself, and objective medical evidence (including radiographs and a physical examination) which supported his credibility determination.

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is

> only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996)(internal citations omitted). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "[h]aving met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight[-]hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90–1 p, 1990 WL 300812).

> The court further acknowledged:
>
> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id.* at 565 n. 3 (quoting *Craig,* 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir.2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96–7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96–7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

> (1) the individual's daily activities;
>
> (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3) factors that precipitate and aggravate the symptoms;
>
> (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3. *See* 20 C.F.R. § 404.1529(c).

The ALJ in the present case properly discounted the plaintiff's credibility based on medical and other evidence. A lumbar MRI in December 2005 showed minor spondylosis with multilevel disease and an MRI in 2006 of the plaintiff's sacrum and coccyx were within normal limits (Tr. 359-61, *see* Tr. 67). Dr. Pelzer noted that the plaintiff had no muscle weakness or sensory deficit, her reflexes were intact, and she had no atrophy. The ALJ also noted that although the plaintiff had a liver impairment, a liver biopsy and an ultrasound in 2011 indicated few bile ducts were damaged, her portal veins were normal, and necrosis was mild (*see* Tr. 67). The ALJ also based his credibility determination on the plaintiff's testimony concerning her activities of daily living, noting that she did dishes and a little

17

dusting, could cook fast meals, did chores at waist heights, and grocery shopped. Although the plaintiff argues that the ALJ was selective in which pieces of testimony he highlighted in his decision, the decision also notes the plaintiff's testimony that her back pain made her fall down and crawl sometimes and her use of a cane (although it was never prescribed). "It is not within the province of a reviewing court to determine the weight of the evidence, nor is the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990) (*citing Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966)).

The plaintiff also argues that the ALJ's erred in his step four RFC determination because he failed to consider all of the evidence in her favor and did not explain how her severe impairments affected her ability to work.[4] In particular, the plaintiff argues that the ALJ failed to note Dr. Pelzer's findings of below normal cervical spine, lumbar spine, and shoulder range of motion; her antalgic gait; and use of a cane. She also argues that the ALJ failed to note Dr. Salamon's findings of restricted lumbar and cervical range of motion and an antalgic gait. The Commissioner contends that the ALJ provided adequate analysis to support the RFC finding because he discussed the material evidence of record, the plaintiff's testimony, and inconsistencies between the two.

Social Security Ruling 96–8p, 1996 WL 374184, provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical

---

[4] As a chiropractor, Dr. Salamon is not an acceptable medical source and thus his opinions are due no special deference. The ALJ properly evaluated these opinions as required and gave them little weight as they were not consistent with the record (*see* Tr. 67).  *See* SSR 06–03p, 2006 WL 2329939.

> evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

Here, despite finding that the plaintiff had the severe impairment of degenerative disc disease, the ALJ found that she could perform the full range of light work. As noted by the plaintiff, under the Medical-Vocational Guidelines ("the Grids"), she would be entitled to disability benefits if she is restricted to sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14. The ALJ discussed some of the findings of Drs. Pelzer and Salamon, but he did not discuss the plaintiff's decreased range of motion in her spine. Additionally, the decision contains no explanation of the ALJ's assessment of the plaintiff's standing, walking, and sitting abilities and the evidentiary support for each. Although the ALJ found that a cane was not prescribed, the plaintiff testified that her physicians agreed that she needed a cane (Tr. 85). Thus, this action should be remanded to determine the plaintiff's RFC based on all of the evidence of record and for the ALJ to provide a narrative explanation for his findings.

*Step 5/Grids*

Finally, the plaintiff argues that the ALJ did not carry his burden at step five because there was no proper RFC determination, the ALJ did not meaningfully identify whether her past relevant work was "heavy" or "light" work (as the Dictionary of Occupational Titles has entries for a truck driver at both exertional levels), and the ALJ should have obtained testimony from a vocational expert. The Commissioner contends that the ALJ's RFC assessment was not flawed, such that the ALJ properly applied the Grids to find that the plaintiff was not disabled. As the undersigned finds that remand is appropriate for the reasons discussed above, the ALJ should be further instructed to continue the sequential evaluation process after determining the plaintiff's RFC.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with remand of the cause to the Commissioner for further proceedings as discussed above.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

July 31, 2014
Greenville, South Carolina

20